**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF WISCONSIN**

PHILIP CHARVAT and KEN JOHANSEN, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiffs

vs.

NATIONAL GUARDIAN LIFE INSURANCE COMPANY

Defendant

Case No. 15-cv-43

CLASS ACTION COMPLAINT

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

The Plaintiffs Philip Charvat and Ken Johansen (collectively referred to as "Plaintiffs") individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of his counsel, and on information and belief as follows:

**NATURE OF ACTION**

1. Plaintiffs bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 745 (2012).

2. This case involves a telemarketing campaign by Defendant National Guardian Life Insurance Company ("NGL") (by and through an unidentified third party) to market their services through use of pre-recorded messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

3. NGL has delegated its marketing duties to third parties and accepted the referrals and sales generated by those third parties. NGL has also actively monitored the actions of those third parties, but failed to prevent the conduct alleged of in this lawsuit. Through this business model, the Defendant caused the Plaintiff and Class Members to be contacted without their prior express written consent within the meaning of the TCPA.

4. Because the calls were transmitted using technology capable of generating hundreds of thousands of telemarketing calls per day, and because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from the Defendant.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

7. Venue is proper in the United States District Court for the Eastern District of Wisconsin because NGL is a resident of this judicial district. *See* 28 U.S.C. § 1391.

**PARTIES**

8. Plaintiff Philip Charvat is, and at all times mentioned herein was, an individual citizen of the state of Ohio.

9. Plaintiff Ken Johansen is, and at all times mentioned herein was, an individual citizen of the state of Ohio.

10. National Guardian Life Insurance Company is a member of the NGL Group on Insurance companies and has its principal place of business in Wisconsin, in this District.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

15. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

16. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

17. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *Id.* (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

18. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

19. A third party made the autodialed and prerecorded message calls described herein "on behalf of" NGL within the meaning of the 2008 FCC Declaratory Ruling.

20. On May 9, 2013, the FCC released a Declaratory Ruling reaffirming that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[1]

21. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

22. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.*at n.107.

23. As part of its marketing practices, NGL relies on third parties that are tasked with securing new customers and soliciting applications for insurance.

24. NGL is legally responsible for ensuring that any third parties they retained are complaint with the TCPA, even if NGL did not themselves make the calls.

25. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

[1] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

## FACTUAL ALLEGATIONS

**The Plaintiff Charvat**

26. Plaintiff Charvat is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27. In 2011, the Plaintiff Charvat placed his residential telephone number on the National Do Not Call Registry.

28. On December 8, 2014, Plaintiff received a telephone call to his telephone.

29. When the phone was answered, an introductory message was played, followed by the following pre-recorded advertisement:

> With the new economic stimulus package going into effect the government has approved a new affordable life insurance program for you and your family. You've been pre-approved for up to 25,000 in final expense life insurance. Please press 1 now to hear what you may qualify for or you can press the 8 key to be removed from future updates. Press the 1 key to see what you qualify for. That's the 1 key. Press it now.

30. The Plaintiff pressed 1 to investigate the source of this call.

31. After the call connected, the Plaintiff was told that he was speaking with Kristy Lawson, who had an "agent number" of 8196, who informed him that the name of her company was National Guardian Life."

32. Ms. Lawson then told the Plaintiff that they've been around for over a hundred years, and that National Guardian Life has been in business since 1911 in the United States, and then proceeded to give Mr. Charvat the website of www.nglic.com.

33. That website is owned and operated by the Defendant.

34. Ms. Lawson then continued to attempt to sell Mr. Charvat burial insurance.

35. The Plaintiff never consented in any fashion to these telephone calls, and had no business relationship with the Defendant.

36. Plaintiff is not a customer of Defendant and has not provided Defendant with his personal information or telephone number.

37. At other times in November and/or December of 2014, the Plaintiff received similar calls with a nearly identical pre-recorded message.

**The Plaintiff Johansen**

38. Plaintiff Johansen is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

39. On September 2, 2014, the Plaintiff Johansen placed his residential telephone number on the National Do Not Call Registry.

40. On December 2, 2014 and December 3, 2014, the Plaintiff Johansen received the same pre-recorded message identified above received by the Plaintiff Charvat.

41. After both calls, the Plaintiff pressed 1 to investigate the source of the call.

42. During those calls, "Renee" and "Keith" claimed to be a NGL representative, and attempted to sell the Plaintiff a NGL insurance policy.

43. During the first call, the Plaintiff asked to be placed on the company's internal Do Not Call list, but still received the second call.

44. The Plaintiff received a similar pre-recorded phone call on December 11, 2014.

45. The Plaintiff never consented in any fashion to these telephone calls, and had no business relationship with the Defendant.

46. Plaintiff is not a customer of Defendant and has not provided Defendant with his personal information or telephone number.

**The Plaintiffs Requested Information from NGL About the Calls**

47. Prior to initiating this lawsuit, each Plaintiff contacted NGL regarding the illegal telemarketing calls they received on behalf of NGL, and requested any information regarding any alleged permission to place the calls to them.

48. In response, NGL did not identify any such information, and merely stated that it works with outside call centers, one of which utilized a source that was responsible for physically transmitting the calls to the Plaintiffs, and presumably to other putative class members.

## CLASS ACTION ALLEGATIONS

49. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully stated herein.

50. Plaintiffs bring this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

51. The class of persons Plaintiffs propose to represent with respect to Count One is tentatively defined, subject to modification after discovery and case development:

> All persons within the United States whom Defendant, directly or through any third party, initiated a telephone call with a pre-recorded message within four years before this Complaint was filed through the date of certification.

52. The class of persons Plaintiffs propose to represent with respect to Count Two is tentatively defined, subject to modification after discovery and case development:

> All persons within the United States whose phone numbers were registered on the Do Not Call Registry, and who, within the four years before the filing of the initial Complaint through the date of certification, received more than one telemarketing call within any twelve-month period from, or on behalf of, Defendant.

Collectively, all these persons will be referred to as "Class members."

53. Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

54. Plaintiffs do not know the exact number of members in the Class, but Plaintiffs believe Class members number, at minimum, in the thousands.

55. Plaintiffs and all members of the Class have been harmed by the acts of the Defendant.

56. This Class Action Complaint seeks injunctive relief and money damages.

57. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

58. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

59. Further, the Class can be identified easily through records maintained by NGL and/or their telemarketing agents, and any third parties that those entities associated with.

60. There are well defined, nearly identical, questions of law and fact affecting all parties.

61. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

62. Such common questions of law and fact include, but are not limited to, the following:

    a. Whether any third party, acting on behalf of NGL, used an artificial or prerecorded voice in its non-emergency calls to Class members' telephones.

        b.        Whether the Defendant can meet its burden of showing they obtained consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

        c.        Whether the Defendant's conduct was knowing and/or willful;

        d.        Whether the Defendant is liable for statutory damages; and

        e.        Whether the Defendant should be enjoined from engaging in such conduct in the future.

63.        Plaintiffs will fairly and adequately represent and protect the interests of the Class.

64.        Further, Plaintiffs have no interests which are antagonistic to any member of the Class.

65.        Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

66.        A class action is the superior method for the fair and efficient adjudication of this controversy.

67.        The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendant from engaging in the same behavior in the future.

68.        Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

69. Defendant and/or any party telemarketing third product have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### Count One:

### Violation of the TCPA's Do Not Call provisions

70. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

71. The Defendant violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

72. The Defendant's violations were negligent and/or knowing.

### Count Two:

### Violation of the TCPA's Prohibition against Advertising Using a Pre-Recorded Message

73. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

74. The Defendant violated the TCPA by initiating any telephone call to a residential telephone line using a prerecorded voice to deliver a message without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(B); *see also* 47 C.F.R. § 64.1200(a)(2).

75. The Defendant's violations were negligent and/or knowing.

**Count Three:**
**Injunctive relief to bar future TCPA violations**

76. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

77. The TCPA authorizes injunctive relief to prevent further violations of the TCPA.

78. The Plaintiffs respectfully petitions this Court to order the Defendant and their employees, agents, and all other persons or entities working on their behalf to make these calls to immediately cease engaging in unsolicited telemarketing in violation of the TCPA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that the Court grant Plaintiffs and all Class members the following relief against the Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B. As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227, Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D. An award of attorney's' fees and costs to counsel for Plaintiff and the Class as part of a common fund or similar methodology;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems

appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F. Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

Edward A. Broderick, *pro hac vice expected*
Email: ted@broderick-law.com
Anthony Paronich, *pro hac vice expected*
Email: anthony@broderick-law.com
BRODERICK LAW, P.C.
125 Summer St., Suite 1030
Boston, Massachusetts 02110
Telephone: (617) 738-7080

Matthew P. McCue, Esq., *pro hac vice expected*
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020

Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

Edward A. Broderick, *pro hac vice expected*
Email: ted@broderick-law.com
Anthony Paronich, *pro hac vice expected*
Email: anthony@broderick-law.com
BRODERICK LAW, P.C.
125 Summer St., Suite 1030
Boston, Massachusetts 02110
Telephone: (617) 738-7080

Matthew P. McCue, Esq., *pro hac vice expected*
Email: mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, emails, recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If defendant is aware of any third party or vendor that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/Alexander H. Burke